In re George Buddy TURLEY and Carole Lynn Turley, f/k/a Carole Lynn Eppes, Debtors.

The FIRST NATIONAL BANK OF DENVER, Denver, Colorado, Plaintiff,

v.

George Buddy TURLEY and Carole Lynn Turley, f/k/a Carole Lynn Eppes, Defendants and Third Party Plaintiffs,

v.

MOBILEHOME MARKETING, INC., Third Party Defendant.

Bankruptcy No. 580–00088.
Adv. No. 581–0001.

United States Bankruptcy Court,
D. South Dakota.

Dec. 15, 1981.

---

J. Crisman Palmer, Gunderson & Palmer, Rapid City, S. D., for plaintiff.

Robert A. Warder, Gunderson, Farrar, Aldrich, Warder & DeMersseman, Rapid City, S. D., for defendants and third party plaintiffs.

Robert M. Nash, Wilson, Bottum, Olson, Goodsell & Nash, Rapid City, S.D., for third party defendant.

Rick A. Yarnall, Dana, Golden, Moore & Rasmussen, Sioux Falls, S. D., Trustee in Bankruptcy.

## MEMORANDUM DECISION

PEDER K. ECKER, Bankruptcy Judge.

George and Carole Turley, hereinafter Debtors, filed a joint petition in a Chapter 7 bankruptcy on August 5, 1980. The First National Bank of Denver, Denver, Colorado, hereinafter Creditor, filed a "Complaint to Reclaim Property." Creditor's pleading is interpreted as a complaint for relief from the automatic stay pursuant to 11 U.S.C. § 362(d). Creditor alleges: 1) Debtors granted it a security interest in a mobile home, 2) Debtors have no equity in the property, 3) the mobile home is not essential to a reorganization, 4) Debtors have not provided adequate protection, and 5) Debtors have defaulted in their payments.

Debtors' Answer to Creditor's Complaint alleges Creditor's notation of a lien upon the Certificate of Title of Debtors' mobile home two months after bankruptcy violates 11 U.S.C. § 362(a)(4) and (5). Debtors further allege the mobile home is exempt as a homestead. Debtors also filed an "Amended Third Party Complaint" against Mobile-home Marketing, hereinafter Seller, alleging fraud for failing to find 30-year financing as agreed for Debtors' mobile home. Debtors also allege Seller committed fraud because Seller convinced Debtors to deed the real property upon which the mobile home is located to Seller as a condition for 30-year financing and Seller did not obtain this financing.

Seller filed an "Answer and Counterclaim to the Amended Third Party Complaint." In Seller's Answer it alleges a general deni-

al and moves the Court to dismiss Debtors' Third Party Complaint for failure to state a claim upon which relief can be granted and a lack of standing on behalf of Debtors to raise the issues in their Complaint. Seller also alleges the following affirmative defenses: 1) Statute of Frauds, 2) lack of consideration, 3) Debtors voluntarily entered into the security agreements, 4) waiver of homestead exemption, and 5) estoppel. Seller counterclaims against Debtors for money paid by Seller because of recourse financing with Creditor on Debtors' mobile home.

Debtors' Reply to Seller's Counterclaim alleges a general denial and a motion to dismiss.

Neither Creditor, Debtors, nor Seller have made Rick A. Yarnall, the Chapter 7 Trustee, hereinafter Trustee, a party to this action.

This Bankruptcy Court held a trial on the aforementioned matters, and this Memorandum Decision is based upon the pleadings, exhibits, and memorandums of law submitted by the parties. Creditor waived the time requirements of 11 U.S.C. § 362(e).

### FINDINGS OF FACT

On January 30, 1980, Debtors purchased from Seller a 1980 Minden Housing Corporation Gemini 70′ × 28′ mobile home, serial No. MHC–80–0268 a/b, hereinafter the mobile home. Debtors executed documents entitled, "Credit Sale Agreement," as shown by Creditor's Exhibit A, a "Sales Contract Disclosure Statement," as shown by Creditor's Exhibit B, and a "Severance Agreement," as shown by Creditor's Exhibit C.

The Sales Contract Disclosure Statement provides the purchase price for the mobile home is $60,770.00. Debtors were allowed $10,770.00 trade-in allowance for a 1977 14′ × 75′ Holly Park mobile home. The amount left to be financed by Debtors was $50,000.00. The Disclosure Statement states an annual percentage rate of 15.45 per cent and monthly payments of $715.25.

The form Sales Contract contains the following term:

"☒ Purchaser wishes Dealer to attempt to arrange financing for the unpaid balance of cash price. Purchaser agrees to execute a credit application, promissory note, security agreement, and such other documents as may be necessary in connection with this transaction and to cooperate fully in Dealer's efforts to obtain financing. Purchaser's application for financing will be referred to:"

and typed in the space underneath is:

"The First National Bank of Denver, 621 17th St., Denver, Co. 80202."

Debtors and Seller executed the Sales Contract Disclosure Statement (Exhibit B).

Debtors executed a Credit Sale Agreement (Exhibit A) with Seller. A term of the Credit Sale Agreement allows Seller to assign the Credit Sale Agreement to Creditor with recourse against Seller for nonpayment by Debtors. Seller assigned the Credit Sale Agreement to Creditor. Another term of the Credit Sale Agreement granted Seller and Creditor a security interest in the mobile home.

Debtors executed a Severance Agreement (Exhibit C) which allows Creditor to enter upon Debtors' premises and take possession of the collateral. In the Acknowledgement to the Severance Agreement, below Debtors' signatures, there is a provision providing a waiver of the right of Debtors' homestead.

During December, 1979, Debtors moved from Denver, Colorado, to Edgemont, South Dakota, for employment purposes. At the same time, Seller delivered and set up the mobile home in Edgemont, South Dakota.

Debtors used $5,500.00 of the $50,000.00 borrowed from Creditor to purchase by Warranty Deed, as shown by Seller's Exhibit # 1, the following described property:

"Lot Five (5) in Block Twelve (12) in Birdsell Addition to Edgemont, Fall River County, South Dakota, according to the recorded plat thereof and together with all improvements thereon."

On March 27, 1980, Debtors conveyed to Seller by Warranty Deed, as shown by Seller's Exhibit # 2, the above described property.

Sometime between April 4, 1980, and September 23, 1980, Debtors and Seller executed a document entitled, "South Dakota Application for Motor Vehicle Title," as shown by Seller's Exhibit # 4.

Debtors' Exhibit # 4 is a letter dated September 23, 1980, from Seller to the Fall River County Treasurer. Seller wrote:

"Enclosed are the necessary papers and the $2.00 fee for filing for title to mobile home, Serial No. MHC–80–0268 a/b, in the name of George B. and Carole L. Turley.

The reason for the delay in filing for this title is that we were going to try to refinance land and home for the Turleys, but they are now declaring bankruptcy and it appears we will not be able to refinance.

Would you please expedite this application for title and registration in order to have a lien filed on the home in our bank's name.

Thank you for your prompt attention to this matter."

The State of South Dakota issued two Certificates of Title on the mobile home on October 14 and 20, 1980, which show a first lien held by Creditor, The First National Bank of Denver, as shown by Debtors' Exhibits # 1 and # 2.

Testimony and Seller's Exhibits # 9 and # 10 show Debtors and Seller agreed that pending Seller's efforts to obtain 30-year financing, Seller would pay the difference between $585.79 and $712.00. Debtors made a few payments and then defaulted.

Creditor agrees that Debtors' appraisal, as shown by Debtors' Exhibit # 3, is accurate. The appraised value of the land and mobile home is $35,000.00. Seller testified the mobile home is worth $49,000.00 without the land.

## CREDITOR'S ARGUMENTS

Relief from the automatic stay pursuant to 11 U.S.C. § 362(d) should be granted and the property returned to Creditor because:

1. Creditor has a security interest in Debtors' mobile home.

2. Debtors have no equity in the mobile home because their appraisal shows a valuation of $35,000.00 for the land and mobile home and their indebtedness is approximately $50,000.00.

3. The mobile home is not essential to a reorganization.

4. Debtors have defaulted in their payments and failed to provide adequate protection.

## DEBTORS' ARGUMENTS

1. Creditor's perfection of its security interest by a notation of a lien upon the Certificate of Title of Debtors' mobile home approximately two months after Debtors filed a Chapter 7 bankruptcy violates the automatic stay provisions of 11 U.S.C. § 362(a)(4) and (5).

2. The mobile home and land are exempt under the homestead exemption.

3. Seller committed fraud by failing to find 30-year financing as agreed for Debtors' mobile home.

4. Seller committed fraud under S.D. C.L. 53–4–5 because Seller convinced Debtors to deed the real property upon which the mobile home is located to Seller as a condition for 30-year financing and Seller did not obtain this financing.

## SELLER'S ARGUMENTS

1. Debtors granted Seller a security interest in the mobile home by executing the Credit Sale Agreement.

2. Debtors lack standing to contest the security interest.

## ISSUE

Whether Creditor's security interest entitles it to relief from the automatic stay and possession of Debtors' mobile home.

## CONCLUSIONS OF LAW

The commencement of a bankruptcy case creates an estate. 11 U.S.C. § 541(a)(1) provides:

"(a) The commencement of a case under section 301, 302, or 303 of this title creates an estate. Such estate is comprised of all following property, wherever located:

(1) Except as provided in subsections (b) and (c)(2) of this section, all legal or equitable interests of the debtor in property as of the commencement of the case."

Debtors' interest in the mobile home at the commencement of the bankruptcy case is a right of possession as evidenced by the Credit Sale Agreement and Sales Contract Disclosure Statement. Debtors' right of possession passed to the bankruptcy estate as provided by 11 U.S.C. § 541. Creditor's interest in the mobile home at the commencement of the bankruptcy case is a right to payment and a right to perfect its security interest as evidenced by the Credit Sale Agreement. Trustee's interest in the mobile home at the commencement of the bankruptcy case is that of a hypothetical judicial lien creditor. 11 U.S.C. § 544(a)(1) provides:

"(a) The trustee shall have, as of the commencement of the case and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

(1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained a judicial lien, whether or not such a creditor exists;".

The South Dakota statute, S.D.C.L. 57A-9-301, provides an unperfected security interest is subordinate to the rights of a person who becomes a lien creditor without knowledge of the security interest and before it is perfected. This statute defines lien creditor as a trustee in bankruptcy.

In this case Creditor claims a security interest in the mobile home which is located in South Dakota. S.D.C.L. 32-3-3.1 provides a mobile home shall have a certificate of title upon sale. South Dakota creditors having a security interest in property on which a certificate of title is required must note their lien upon the title in order to be perfected. S.D.C.L. 57A-9-302 provides:

"(3) The filing provisions of this chapter do not apply to a security interest in property subject to a statute

. . . .

(b) Of this state which provides for central filing of, or which requires indication on a certificate of title of, such security interests in such property.

(4) A security interest in property covered by a statute described in subsection (3) can be perfected only registration or filing under that statute or by indication of the security interest on a certificate of title or a duplicate thereof by a public official."

■ Upon a reading of 11 U.S.C. § 544 and S.D.C.L. 57A-9-301, which arm a trustee in bankruptcy with a perfect creditor status, it is clear the intent of Congress and the South Dakota Legislature is a creditor must have a perfected security interest in its collateral at the time of bankruptcy in order to defeat the interest of a trustee.

In this case Creditor notes its lien on the Certificate of Title approximately two months after filing bankruptcy.

■ This Bankruptcy Court holds Creditor is not entitled to relief from the automatic stay to reclaim the mobile home because Creditor had an unperfected security interest at the time of filing bankruptcy which does not defeat Trustee's interest as a hypothetical judicial lien creditor.

■ 11 U.S.C. § 541 provides a creditor's interest in the debtor's property is fixed at the time of filing bankruptcy. In this case, Creditor's interest in the mobile home is unperfected because Creditor failed to perfect its security interest by noting its lien on the Certificate of Title prior to Debtors' bankruptcy filing date. 11 U.S.C. § 544 provides Creditor's unperfected status is subordinate to that of Trustee's. Consequently, the mobile home remains property

**104**

of the bankruptcy estate which is subject to administration by Trustee.

Seller's efforts to find 30-year financing for Debtors' mobile home did not prevent Creditor from perfecting its security interest.

This Bankruptcy Court further holds as follows:

1. Debtors' claim of homestead exemption will be reviewed by Trustee.

2. Debtors' Third Party Complaint against Seller alleging fraud is dismissed because Debtors have not made a prima facie case and a bare allegation of fraud is not sufficient proof.

3. Seller's Counterclaim against Debtors for money paid by Seller because of recourse financing with Creditor on Debtors' mobile home is dismissed, leaving Seller with the remedy of filing a proof of claim in this bankruptcy estate.

The foregoing shall constitute Findings of Fact and Conclusions of Law, and Attorney Warder shall submit an order consistent with this Memorandum Decision.